### 6733

### JONES v. WILLCOX, RECEIVER.

1. ISSUES—RAILROAD—NEGLIGENCE.—Under evidence here it was proper to submit to jury whether the derailment of the engine and death of engineer was caused by a defective frog and the wet and boggy condition of the soil, or by his negligence in running his train into the yard, up grade, on a reverse curve at a greater rate of speed than prescribed by the rules of the railroad company.

2. REHEARING refused.

Before WATTS, J., Georgetown, June, 1906. Affirmed.

Action by Lula A. Jones, administratrix of James A. Jones, against P. A. Wilcox, receiver of Georgetown and Western Railroad Co. From judgment for plaintiff, defendant appeals.

*Messrs. LeGrand G. Walker* and *Willcox & Willcox* and *Henry E. Davis,* for appellant. *Mr. Walker,* no citations.

*Messrs. Willcox & Willcox and Henry E. Davis* cite: *Allegations of specific acts of negligence supersede general allegations:* 128 Fed., 88. *Defect in appliances can not be shown by accident only:* 72 S. C., 398. *Master only required to furnish reasonably safe machinery:* 34 S. C., 211. *Law applicable to this case is stated in:* 72 S. C., 398.

*Messrs. Walter Hazard* and *Howell & Gruber,* contra. *Mr. Hazard* cites: *Action of Circuit Judge in refusing new trial is only reviewable when he commits error of law, and when the question is as to the weight of the evidence, there is no error of law:* 44 S. C., 325; 57 S. C., 243, 280, 358; 58 S. C., 70, 373; 59 S. C., 165, 523; 60 S. C., 201, 498; 70 S. C., 526; 52 S. C., 371; 53 S. C., 215; 23 S. C., 231; 21 S. C., 558; 36 S. C., 585; 61 S. C., 490; 62 S. C., 377, 546; 64 S. C., 26, 344, 566; 65 S. C., 197, 378, 610; 57 S. C., 400; 66 S. C., 61, 302, 419; 54 S. C., 599; 67 S. C., 18; 68 S. C., 53, 119, 446, 523; 69 S. C., 101; 72 S. C., 43, 244;

73 S. C., 43; 74 S. C., 89; 75 S. C., 150, 290, 390, 512. *Where evidence admits of more than one inference new trial should not be granted:* 75 S. C., 141. *There is no effort here to found a presumption on a presumption or an inference on an inference:* 72 S. C., 398; 75 S. C., 173, 182, 141.

February 10, 1908. The opinion of this Court was delivered by

MR. JUSTICE JONES. James A. Jones, while in the employ of the receiver of the Georgetown & Western Railroad Company as engineer of a logging train, was killed at Georgetown, S. C., December 3, 1904, by the derailment of said train. The plaintiff, as administratrix, brought this action for damages, alleging that said death was the result of defendant's negligence and recovered judgment for $7,500.

The appellant's exceptions mainly involve the inquiry whether there was any evidence tending to show negligence as alleged.

The complaint alleged negligence in failure to provide a safe and properly constructed railroad track at the place of derailment in these particulars: (1) a defective and unsafe frog, (2) a double or reverse curve with radii too short, (3) insufficient elevation of the outer rail of the curve, (4) soft and boggy condition of the track. The plaintiff relied principally on the alleged defective frog and boggy condition of the track as the cause of the derailment, and it will be sufficient for the purposes of this appeal to limit our examination of the testimony to these points.

With respect to the roadbed, the witness J. H. Freeman testified at folios 191, 192, that he reached the place about twenty or thirty minutes after the wreck, that at the place where the cars left the track, as shown by the marks of the wheels on the cross-ties, the condition of the soil around the cross-ties was such that the mud and water would slush up on the ties. This testimony was in response to the allegation of the complaint, and, while strongly combated by de-

fendant, it was sufficient to go to the jury on the question whether the yielding condition of the track was the result of defendant's negligence and whether such condition caused the derailment.

With respect to the alleged defective frog; the witness, Freeman, testified, at folios 70 and 94, that he saw the marks of the wheels on the cross-ties "just beyond the frog," that he saw marks across the point of the frog "as though something heavy had run across it, about like the flange of a wheel would make." The witness D. C. Simpkins testified, at folio 215, he saw the marks on the end of the frog where, in his judgment, the flange of the wheel struck and that twelve or fourteen feet further on he saw where the flange struck the crossties. The witness, Jim Mouson, testified that he was riding on the engine by permission at the time of the wreck, and at folio 169 he said: "The train struck on some part of the track, I don't know whether it was the frog or not," and at folio 180 he said that "when the engine gave the first jump it sounded just like it was going over the joints of the track." W. H. Andrews, the superintendent of the defendant railroad company, at folio 156, testified that "the life of a frog in a place of that kind would only be from a year to a year and a half," and at folio 267, that the frog in use at the time of the wreck was taken up about three months before the date of the trial, which was in June, 1906. The wreck occurred December 3, 1904. J. W. Hathcock, the defendant's yard section-master, testified, at folios 412-414, that he put the said frogs in when he first took charge of the yard, that he kept the yard for about two years and a half, and that the frogs had been in use about a year and a half before the accident, and were in use for four months after the accident. While the superintendent and section-master and other witnesses testified that the frogs were in good condition at the time of the accident, the jury may still have concluded from the evidence that the frogs had become defective and unsafe from the long use. It can not be said that the evidence afforded no basis for an inference that the

wreck was the result of the defendant's negligence in failing
to provide a reasonably safe track.

It is contended further that if the accident was the result
of defendant's negligence, the plaintiff's intestate contributed
thereto by his own negligence in running his train within
the yard limits at Georgetown at an excessive rate of speed,
in violation of the rules of the company, and that it
was error of law to refuse a new trial, because the evidence
was not susceptible of any other inference than that plain-
tiff's intestate was guilty of such contributory negligence. A
promulgated rule of the company, known to plaintiff's in-
testate, required that the speed of all trains within the
'Georgetown yard should not exceed six miles an hour. The
testimony leaves no room to doubt that the train was run-
ning at a greater speed than the rule prescribed, estimated
by defendant's witnesses at from fifteen to eighteen miles
an hour. The deceased was taking in a train of fifty to
sixty cars, heavily loaded with logs, and the track was wet
and slippery, curved and up-grade within the yard from
Front street. There was some testimony, that in order to
pull in such a train without stalling, it would be necessary
to go in with a speed of twelve to fifteen miles an hour, and
there was also some testimony that engineers had been
criticised by the yard-master for not making the curve with-
out stalling. There was some testimony that it was custom-
ary for engineers to go into the yard "very fast," but that
it was also customary for the railroad officials to protest
"against the practice."

The object of the rule, as stated by Superintendent An-
drews, was to diminish the danger of misplaced switches
and collision with cars upon the track, the low speed re-
quired giving greater control over the train. This witness
also stated that in the absence of the contingencies against
which the rule was intended to guard, it would be safe to run
within the yard at a rate of fourteeen miles an hour. There
was no evidence in this case of any misplaced switch or
track obstruction and no evidence that the plaintiff's intes-

tate had any knowledge of the defective condition of the track. The train, after stopping, entered the yard upon signal from the yard-master, who controlled the movements of the train within the yard.

In view of all the circumstances, it was proper for the jury to determine whether the deceased was negligent in running into the yard with speed greater than prescribed by the rules of the company and whether such operation of the train, if negligent, proximately caused or contributed to his injury. It can not be said that the testimony is susceptible of no other inference than that the negligence of the deceased caused or contributed to his injury.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.

2    Rehearing refused, April 15, 1908.